**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| GERALD METALS, LLC, | : | |
| Petitioner, | : | CIVIL CASE NO. |
| | : | 3:20-CV-00686 (JCH) |
| v. | : | |
| | : | |
| GREGORY DAVIDSON ET AL., | : | |
| Respondents. | : | |
| | : | OCTOBER 27, 2021 |

**RULING ON PETITIONER'S SECOND AMENDED PETITION TO VACATE (DOC. NO. 36) AND RESPONDENTS' CROSS-MOTION TO AFFIRM (DOC. NO. 20)**

## I.    INTRODUCTION

The petitioner, Gerald Metals, LLC ("Gerald"), brings this action under the Federal Arbitration Act ("FAA"), sections 10 and 12 of title 9 of the United States Code, or, alternatively, sections 52-418(a)(3) and 52-418(a)(4) of the Connecticut General Statutes, to vacate a Final Arbitration Award issued in favor of the respondents, Gregory Davidson ("Davidson") and Windrose Trading, LLC ("Windrose"). Davidson and Windrose cross move to affirm the Award under section 9 of title 9 of the United States Code.

Before the court are the petitioner's Second Amended Petition to Vacate (Doc. No. 36) ("Am. Pet.") and the respondents' Cross-Motion to Affirm (Doc. No. 20). For the reasons set forth below, the petitioner's Motion is denied and the respondents' Cross-Motion is granted.

## II.    BACKGROUND

### A.    Factual Background[1]

In 2013, petitioner Gerald, a commodity trading company, contracted with respondent Davidson's company, Windrose.  Under this contract and a subsequent agreement, Windrose operated a fund for Gerald known as the "Diversified Desk."  In January 2017, Windrose terminated its existing agreement so that Windrose could start a new fund independent of Gerald.  The parties decided to negotiate a new agreement allowing Windrose to operate its own separate fund.

To that end, the parties entered into the services agreement relevant to this case ("Services Agreement") effective January 1, 2017.  See Am. Pet. at ¶¶ 1-6; Services Agreement (Doc. No. 20-3).  Under the Services Agreement, the parties consented to submit "any dispute, controversy, or claim arising out of or relating to this Agreement or the performance by the Parties of its or their terms" to arbitration before the American Arbitration Association ("AAA").  Services Agreement at ¶ 21(b).  The Services Agreement also specified that Gerald's Diversified Desk and Windrose's new fund would be run using the same strategies and taking the same positions.  Id. at ¶ 4.  Windrose's compensation under the Services Agreement consisted of base compensation as well as a profit sharing bonus tied to the performance of the Diversified Desk.  Id. at ¶ 5.  The Services Agreement also included a non-solicitation provision, id. at ¶¶ 9-10; a provision related to Chinese tax issues and Gerald's subsidiary, GEMSHA, id. at Schedule C; a provision requiring Windrose to forgo

---

[1] Unless otherwise noted, the factual background is drawn from the arbitration award. Davidson et al. v. Gerald Metals, LLC, 01-18-0003-5618 (2020) (Scanza, Arb.) ("Award") (Doc. No. 36-2).

compensation if it terminated the agreement, id. at ¶ 5(b)(2); and a provision defining "for cause" termination.  Id.

When the parties entered into the Services Agreement, Gerald's fiscal year ran from May through April.  However, in 2017, Gerald changed its fiscal year to a calendar year.  Based on the fiscal year ending April 30, 2017, Gerald paid $935,000 to Windrose for the first fifty percent of the 2017 profit sharing bonus.  Of the $935,000, $374,000 was paid to a Windrose employee not party to this case, Mr. Campbell, while the remainder was paid to Davidson.  From May to December of 2017, the Diversified Desk incurred losses.  Thus, in October 2017, when Davidson requested the remainder of the 2017 bonus, Gerald claimed that Windrose was not entitled to any further bonus and that Gerald was entitled to claw back the initial fifty percent payment.  The parties met in January 2018, to attempt to resolve the dispute and negotiate a new contract.  Ultimately, they failed to reach an agreement and terminated the Services Agreement.

On September 24, 2018, Davidson and Windrose demanded AAA arbitration of their claims against Gerald, who filed counterclaims.  See Am. Pet. at ¶¶ 10-11.  Arbitrator Rocco Scanza heard the dispute, which concerned two issues arising out of the Services Agreement: (1) whether Davidson and Windrose were entitled to compensation in the form of a performance bonus and base compensation and (2) whether Gerald had a right to claw back the performance bonus as well as damages.  See Am. Pet. at ¶ 12-13.  Ultimately, on March 13, 2020, Mr. Scanza issued a Final Arbitration Award in favor of Davidson and Windrose, denying Gerald's counterclaims.  Id. at ¶¶ 16-17; Award. In his Decision, the arbitrator determined the following:

1.   Gerald, not Davidson and Windrose, terminated the Service Agreement on January 30, 2018. See Award at 39.

3

2.      The termination of the Service Agreement was not for cause. See id. at 49.

3.      Gerald was not entitled to claw back the bonus money paid to Davidson and Windrose.  See id. at 50-51.

4.      Davidson and Windrose were entitled to be paid the remaining portion of the profit-sharing bonus on the basis of the May 2016 to April 2017 fiscal year within sixty days of the Service Agreement's January 30, 2018 termination.  See id. at 56.

5.      Because Gerald terminated Davidson before he could address lingering GEMSHA tax issues, Gerald's actions in withholding the second half of Davidson and Windrose's bonus was unreasonable and in contravention of the Services Agreement.  See id. at 59.

6.      Because Gerald was required to give Windrose sixty days' written notice of termination and continue to pay consulting fees during the notice period, Windrose and Davidson were entitled to $75,000 in fees for the two months following the agreement's termination. Id. at 59-61.

7.      Davidson was entitled only to the portion of the performance bonus that would have been allocated to him, not to his employee, Mr. Campbell.  Id. at 62.

B.      Procedural Background

Following the arbitration Decision, Gerald filed its initial Petition to Vacate the Arbitration Award under the FAA, raising no state law claims.  See Pet. to Vacate (Doc. No. 1).  Gerald filed an Amended Petition on July 7, 2020, which, likewise, sought to vacate the award under the FAA.  See First Am. Pet. to Vacate (Doc. No. 7).  Around one month later, on August 20, 2020, Gerald filed a Notice of Removal of a state court action filed against it by the respondents.  See Notice of Removal (Doc. No. 20).  The court remanded the state case to the Connecticut Superior Court on October 6, 2020.

On September 20, 2020, Davidson and Windrose filed a Cross-Motion to Confirm the Arbitration Award along with a response to Gerald's Amended Complaint.  See

Resp'ts' Cross-Mot. to Confirm (Doc. No. 20).  In their Cross-Motion, Davidson and

Windrose argued, in part, that Gerald failed to timely serve notice of its FAA claims

against the respondents.  <u>See</u> Resp'ts' Mem. in Support of Cross-Mot. to Confirm at 1

(Doc. No. 20-1).  In an attempt to avoid these timeliness issues, Gerald then filed a

Motion to Amend on November 19, 2020, seeking for the first time to assert state law

claims.  Mot. to Amend (Doc. No. 29).  The respondents opposed Gerald's Motion,

arguing that the state law claims were likewise untimely, despite an Executive Order

issued by Governor Lamont on March 19, 2020, which suspended many Connecticut

limitations periods.  <u>See</u> Mem. in Opp'n to Mot. for Leave to Amend (Doc. No. 31).  The

court granted Gerald's Motion, noting that "the Respondents raise serious questions on

whether the Executive Order applies here . . . ." <u>See</u> Order (Doc. No. 34).

 Gerald filed its Second Amended Petition to Vacate the Arbitration Award on May

21, 2021, adding state law grounds to vacate the Award.  <u>See</u> Am. Pet. (Doc. No. 36).

The Respondents opposed this Petition. <u>See</u> Resp'ts' Opp'n to Am. Pet. (Doc. No. 39).

### III. LEGAL STANDARD

 A. <u>FAA</u>

 Confirmation of an arbitration award is generally "a summary proceeding that

merely makes what is already a final arbitration award a judgment of the

court." <u>D.H. Blair & Co., Inc. v. Gottdiener</u>, 462 F.3d 95, 110 (2d Cir. 2006)

(quoting <u>Florasynth, Inc. v. Pickholz</u>, 750 F.2d 171, 176 (2d Cir.1984)).[2]  It is well settled

---

 [2] Connecticut courts "look to federal precedent for guidance" when analyzing FAA claims. <u>See,
e.g.</u>, <u>All Seasons Servs., Inc. v. Guildner</u>, 94 Conn. App. 1, 9 (2006); <u>see also</u> <u>State v. Sebastian</u>, 243
Conn. 115, 138 (1997) ("In general, we look to the federal courts for guidance in resolving issues of
federal law"); <u>see also</u> <u>Garrity v. McCaskey</u>, 223 Conn. 1, 9 (1992) (looking to federal precedent to
analyze Connecticut's arbitration provisions, explaining "[t]he federal statute that provides for vacating an
arbitration award, 9 U.S.C. § 10(d), is virtually identical to General Statutes § 52–418(a)(4)"); <u>Loc. 1336,</u>

that the court's function in confirming or vacating an arbitrator's award is "severely

limited", Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp., 103 F.3d

9, 12 (2d Cir.1997) (citations omitted) ("Willemijn"), and the district court "must grant"

a petition to confirm the arbitration award "unless the award is vacated, modified, or

corrected." 9 U.S.C. § 9.  The arbitrator need not explain his rationale for an award, and

the district court will confirm the award "if a ground for the arbitrator's decision can be

inferred from the facts of the case." D.H. Blair, 462 F.3d at 110 (quoting Barbier v.

Shearson Lehman Hutton, Inc., 948 F.2d 117, 121 (2d Cir.1991)).

     B.    Connecticut State Law

Under Connecticut law, "the scope of review for arbitration awards is exceedingly

narrow . . . . [E]very reasonable inference is to be made in favor of the arbitral award

and of the arbitrator's decisions." Benistar Emp. Servs. Tr. Co. v. Benincasa, 189 Conn.

App. 304, 310, cert. denied, 331 Conn. 932 (2019) (citation omitted).  Although

Connecticut courts afford "wide berth" to arbitrators, three grounds exist for vacating

arbitration awards: (1) "when the arbitrator has ruled on the constitutionality of a

statute"; (2) "when the award violates clear public policy"; and (3) when "the award

contravenes one or more of the statutory proscriptions of . . . § 52–418." Bd. of Educ. of

Town of Plainfield v. Loc. R1-126, Nat. Ass'n of Gov't Emps., 108 Conn. App. 35, 39–40

(2008) (citation omitted).

---

Amalgamated Transit, Union, AFL-CIO v. First Student, Inc., No. 3:11-CV-1850 VLB, 2013 WL 588199, at
*3 (D. Conn. Feb. 13, 2013) ("The statute governing arbitration awards in the state of Connecticut mirrors
the FAA. C.G.S.A. § 52–420.").

Where claims under section 52-418 are at issue, "the arbitrators are empowered to decide factual and legal questions and an award cannot be vacated on the grounds that . . . the interpretation of the agreement by the arbitrators was erroneous." Id. at 40. Furthermore, where a submission is unrestricted,[3] courts will not review the evidence nor the arbitrators' decision of the legal questions involved.  Id. at 40-41.  "In other words, [u]nder an unrestricted submission, the arbitrators' decision is considered final and binding; thus the courts will not review the evidence considered by the arbitrators nor will they review the award for errors of law or fact."  Id. at 41.

IV.     **DISCUSSION**

    A.    <u>FAA Claims</u>

        1.    Statute of Limitations

The respondents argue that Gerald's petition to vacate the Award is time barred, because Gerald failed to serve notice of the petition on the defendants or their counsel within three months of the date of the Award.  Under the FAA, "[n]otice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered."  9 U.S.C. § 12.  The Second Circuit has construed the FAA's time restraints strictly, observing that the statute contains "[n]o exception to this three month limitations period."  See <u>Florasynth, Inc. v. Pickholz</u>, 750 F.2d 171, 175 (2d Cir. 1984) (holding, also, that "there is no

---

[3] A submission is "unrestricted" where, as here, the parties' agreement conferring the arbitrator's authority over the dispute imposes no limitations on the breadth of issues to be resolved. <u>See</u> Service Agreement at ¶ 21(b) (Doc. No. 20-3) (agreeing to submit to arbitration "any dispute, controversy or claim arising out of or relating to this Agreement or the performance by the Parties of its or their terms."); <u>see also</u> <u>Garrity v. McCaskey</u>, 223 Conn. 1, 5 (1992) ("The authority of an arbitrator to adjudicate the controversy is limited only if the agreement contains express language restricting the breadth of issues, reserving explicit rights, or conditioning the award on court review. In the absence of any such qualifications, an agreement is unrestricted.").

common law exception to the three month limitations period on the motion to vacate");

see also Pennsylvania Eng'g Corp. v. Islip Res. Recovery Agency, 710 F. Supp. 456,

461 (E.D.N.Y. 1989) (finding a motion untimely, even where neither party raised the

issue of timeliness, because "these time limits are not waivable").  To comply with the

statute's requirements, a petitioner must not only file a motion to vacate, but also serve

notice upon the adverse party within three months of the arbitration award's filing or

delivery. See Hakala v. J.P. Morgan Sec. Inc., 186 F. App'x 131, 133 (2d Cir. 2006) ("by

its plain language, § 12 applies only to notice, i.e., service, it does not apply to filing")

(summary order).

        Gerald failed to meet the FAA's "strict" time limit.  See Arrowood Indem. Co. v.

Trustmark Ins. Co., 938 F. Supp. 2d 267, 273 (D. Conn. 2013) (citation omitted), aff'd,

560 F. App'x 75 (2d Cir. 2014) (summary order).  Here, the arbitrator issued the Final

Arbitration Award on March 13, 2020.  See Am. Pet. at ¶¶ 16, 17; Award.  Thus, the

FAA required Gerald to serve notice on Windrose and Davidson by June 13, 2020,

three months later.  Gerald, however, did not serve notice of its May 15, 2020 Petition to

Vacate (Doc. No. 1) or its July 7, 2020 Amended Petition to Vacate (Doc. No. 7) until

July 30, 2020.  See Resp'ts' Mem. in Support of Cross-Mot. at 16-17 (Doc. No. 20-1);

Email from Kevin Lennon Dated July 30, 2020 (Doc. No. 20-4); Email from Patrick

Lennon Dated July 31, 2020 (Doc. No. 20-5).

        Gerald does not dispute the timing of its service, but argues that its failure to

serve notice within three months after the issuance of the award "is rendered moot by

Respondents' agreement to proceed in this action, Petitioner's voluntary dismissal of

the removed action in reliance on that agreement, and respondents' further agreement

to dismiss their state court action which was [sic] now been remanded." Gerald's Mem. in Opp'n to Resp'ts' Cross-Mot. at 1 (Doc. No. 26).  In support of this argument, Gerald cites no case law countering the Second Circuit's express holding that there is neither a statutory nor a common law exception to the FAA's three-month limitations period. See Florasynth, 750 F.2d at 175.  This court cannot create an exception where none exists.

Furthermore, even if the three-month period were waivable,[4] Gerald has made no factual allegations that the respondents agreed to waive the deadline.  In support of his contention that the respondents "waived the lack of timely notice", see Pls.' Mem. in Opp'n to Resp'ts' Cross-Mot. at 2, Gerald cites paragraph 21(c) of the Services Agreement, which permits the parties to bring an action "in a federal court sitting in Connecticut to compel arbitration, enforce an arbitration award, or to seek relief . . . ." See Services Agreement at ¶ 21(c).  In that paragraph, the parties also agree to waive personal service in favor of service by mail, but Gerald does not contend that it made timely service by mail.  Beyond this reference to the Services Agreement, Gerald offers no more than general allegations that the respondents constructively waived their timeliness claims by agreeing to proceed in this action and to dismiss their state court action.  Even if, as Gerald asserts, the respondents agreed to proceed in federal court,

---

[4] The Second Circuit has not addressed whether the parties may agree to waive the three-month period, although the Circuit's statement in Florasynth that the statute contains "no exception" suggests they may not.  See 750 F.2d at 175; see also Pennsylvania Eng'g Corp., 710 F. Supp. at 461.  Some courts in other Circuits, however, have held that the time limit in section 12 of the FAA is not jurisdictional in nature and may, thus, be waived in some circumstances.  See, e.g., Watermill Ventures, Ltd. v. Cappello Cap. Corp., No. 2:14-CV-08182-CAS, 2015 WL 251895, at *5 (C.D. Cal. Jan. 5, 2015) (gathering cases), aff'd, 671 F. App'x 492 (9th Cir. 2016); see also Nat'l Resident Matching Program v. Alashry, No. CV 17-2557 (RDM), 2018 WL 4760358, at *4 (D.D.C. Sept. 27, 2018) ("Although the D.C. Circuit has never addressed whether section 12 of the FAA imposes a jurisdictional bar, the Supreme Court's decisions in Arbaugh v. Y&H Corp., 546 U.S. 500 (2006), and its progeny support the conclusion that it is not.") (gathering cases).

there is no indication nor allegation that they agreed to abandon their argument that Gerald's petition was untimely.  The respondents have asserted their timeliness claims throughout briefing.  See, e.g., Resp'ts' Cross-Mot. at 2; Resp'ts' Reply at 1-3; cf. Foster v. Turley, 808 F.2d 38, 41 (10th Cir. 1986) (determining, on appeal, that a defendant waived section 12 timeliness claims when he failed to raise them in the trial court).  Gerald, however, has alleged no facts showing the respondents agreed to forgo a timeliness argument; nor has Gerald produced any case law supporting his contention this court should find his lack of timeliness "mooted" by the respondents' agreement to proceed in federal court.[5]

Gerald further contends that the three-month limitations period for its Petition to Vacate is "rendered academic", as Gerald asserts its FAA claims in its Opposition to the respondents' Cross-Motion.  See Pls.' Mem. in Opp'n to Resp'ts' Cross-Mot. at 2.  However, the Second Circuit has held that a party's "failure to move to vacate [an] award within the three-month time provided precludes him from later seeking that relief when a motion is made to confirm the award." Florasynth, 750 F.2d at 175.  Thus, Gerald's FAA claims in both its Second Amended Petition to Vacate and its Opposition to the Respondents' Cross-Motion to Confirm are time barred.

B.    Connecticut State Law Claims

In addition to his federal claims, Gerald seeks to vacate the arbitrator's decision under Connecticut state law.  Gerald argues that the arbitrator imperfectly executed his powers and manifestly disregarded Connecticut law.  The respondents counter that

---

[5] Nor has this court's independent review of case law revealed any cases in this Circuit suggesting that the court should toll the strict time limits of section 12 under these circumstances.

there is no basis to vacate the award because the arbitrator neither deprived Gerald of a full and fair hearing nor exceeded his powers.  Furthermore, the respondents contend that Gerald failed to bring his claims within the requisite limitation period.  The court first addresses the respondents' timeliness argument before turning to the merits of Gerald's claims.

> 1.    Period of Limitations

The respondents argue that the court lacks subject matter jurisdiction over Gerald's state law claims because Gerald failed to move to vacate within Connecticut's thirty-day period of limitations.  See Resp'ts' Opp'n at 1 (Doc. No. 39); see also Conn. Gen. Stats. § 52-420(b).  Gerald, however, contends that its claims are timely, as the limitations period was suspended by an executive order.  See Gerald's Reply at 2-3.

Under section 52-420(b) of the Connecticut General Statutes, "[n]o motion to vacate, modify or correct an award may be made after thirty days from the notice of the award to the party to the arbitration who makes the motion."  Here, the Final Award was issued on March 13, 2020, and the first time Gerald sought to vacate under Connecticut state law was October 26, 2020, in its Motion for Leave to Amend.  See Mot. for Leave to Amend (Doc. No. 28).  Clearly, Gerald failed to raise his claims within the three-month period.  However, on March 19, 2020, in response to the outbreak of the COVID-19 virus, Governor Lamont issued Executive Order No. 7G, which suspended "all statutory . . . time requirements, statutes of limitation, or other limitations or deadlines relating to service of process, court proceedings or court filings . . . ."  See Executive Order No. 7G (March 19, 2020), CT.Gov, https://portal.ct.gov/-/media/Office-of-the-

Governor/Executive-Orders/Lamont-Executive-Orders/Executive-Order-No-7G.pdf.[6] The Executive Order remained in effect until March 1, 2021.  See Executive Order No. 10A (February 8, 2021), CT.GOV, https://portal.ct.gov/-/media/Office-of-the-Governor/Executive-Orders/Lamont-Executive-Orders/Executive-Order-No-10A.pdf. Thus, if the Executive Order suspended the time limits in section 52-420(b), then Gerald's state law claims were timely.

As the Connecticut Supreme Court made clear in a recent decision, the state's General Assembly has the authority to delegate its powers to the Governor in cases of emergency;  once the General Assembly has determined the best measures to address a danger to public "health, safety, morals, and welfare" "it may carry out that policy by delegating to the executive branch the power to fill in the details in order to effectuate that policy." Casey v. Lamont, 338 Conn. 479, 505 (2021).  In response to the COVID-19 pandemic, Governor Lamont properly exercised powers delegated to him by the legislature, issuing executive orders within his "broad statutory and constitutional authority", including Executive Order 7G.  See id. at 523.

In In re Jacob M., the Appellate Court of Connecticut held that Executive Order 7G's suspension of a different statute's time limitation was "not inconsistent with the constitutional principle that the General Assembly cannot delegate its lawmaking power."  204 Conn. App. 763, 772-73, cert. denied, 337 Conn. 909 (2021), and cert. denied sub nom. In re Natasha T., 337 Conn. 909 (2021).  As the Appellate Court

---

[6] The court takes judicial notice of the State of Connecticut's online copy of the Governor's Executive Order. See Fed. R. Evid. 201(b) ("The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.").

explained, the General Assembly "exercised its legislative power when it decided that the governor could suspend statutes that conflict with civil preparedness or public health upon the governor's ascertaining and declaring of the existence of a particular contingency." Id. at 773.

Despite the legislature's broad grant of authority to Governor Lamont, the respondents in the instant case argue that Executive Order 7G does not apply to suspend section 52-420(b)'s thirty-day limitations period because section 52-420(b)'s time limitation is subject-matter jurisdictional. See A Better Way Wholesale Autos, Inc. v. Saint Paul, No. 20386, 2021 WL 1432931, at *3 (Conn. Apr. 15, 2021).[7]  However, no Connecticut court has held that Executive Order 7G applies with less force to subject matter jurisdictional time limits.  Furthermore, the only Connecticut court to consider the issue to date has held that the Governor's Executive Order did suspend the thirty-day period prescribed in section 52-420(b).  See Cohen & Wolf, PC v. Netter, No. FSTCV195024695S, 2021 WL 21829 17, at *6 (Conn. Super. Ct. May 6, 2021). Connecticut's Superior Courts have likewise held that Executive Order 7G suspended deadlines for other subject matter jurisdictional statutes.  See Strileckis v. Intercontinental Holding Co., Inc., No. UWYCV196048260S, 2021 WL 2302601, at *2 (Conn. Super. Ct. Apr. 19, 2021) (holding that "the broad language of Executive Order

---

[7] While the respondents argue that subject matter jurisdictional statutes like section 52-420(b) cannot be tolled under Connecticut law, see Resp'ts' Opp'n. at 9-13, the cases upon which they rely discuss the doctrine of equitable tolling, which is inapplicable to the Executive Order at issue here.  See Jackson v. Drury, 191 Conn. App. 587, 605 (2019); Godaire v. Freedom of Info. Comm'n, 141 Conn. App. 716, 719 n.3 (2013) (mem.) (per curiam); Oliphant v. Comm'r of Correction, 83 Conn. App. 10, 16 (2004), aff'd, 274 Conn. 563, 580–81 (2005).

13

7G includes the time limitation set forth in General Statutes § 52-102a(c),[8] and that the plaintiffs failure to strictly comply with the filing deadline . . . does not deprive the court of subject matter jurisdiction."); see also Osborne v. Town of Hamden, No. CV 18-6084179, 2020 WL 9601504, at *1 (Conn. Super. Ct. Nov. 10, 2020) (court entertained plaintiff's late objection to defendant's motion for summary judgment "because Executive Order, No. 7G has temporarily vitiated such deadlines for the Superior Court"); Silvestro v. Roper, No. HHDCV216137760S, 2021 WL 3487722, at *4 (Conn. Super. Ct. July 13, 2021) ("Executive Order No 7G applies to suspend the time requirement present in § 30-102[9] and the court has subject matter jurisdiction over the present action").

Based on these decisions and the plain language of Executive Order 7G, the Executive Order suspended the thirty-day limitations period, making Gerald's state law claims timely.

_____

[8] Section 52-102a(c) of the Connecticut General Statutes provides in relevant part: "The plaintiff, within twenty days after the third-party defendant appears in the action, may assert any claim against the third-party defendant arising out of the transaction or occurrence that is the subject matter of the original complaint, and the third-party defendant, as against such claim, shall have available to him all remedies available to an original defendant, including the right to assert set-offs or counterclaims against the plaintiff."

[9] Section 30-102 of the Connecticut General Statutes, the Dram Shop Act, provides in relevant part: "If any person ... sells any alcoholic liquor to an intoxicated person, and such purchaser, in consequence of such intoxication, thereafter injures the person ... of another, such seller shall pay just damages to the person injured ... provided the aggrieved person or persons shall give written notice to such seller of such person's or persons' intention to bring an action under this section. Such notice shall be given (1) within one hundred twenty days of the occurrence of such injury to person or property, or (2) in the case of the death or incapacity of any aggrieved person, within one hundred eighty days of the occurrence of such injury to person or property. Such notice shall specify the time, the date and the person to whom such sale was made, the name and address of the person injured or whose property was damaged, and the time, date and place where the injury to person or property occurred. No action under the provisions of this section shall be brought but within one year from the date of the act or omission complained of."

14

2.      Arbitral Misconduct

The court now turns to the merits of Gerald's claims under section 52-418(a) of the Connecticut General Statutes.  First, Gerald asks the court to vacate the Award under section 52–418(a)(3), which provides, in relevant part, the court "shall make an order vacating the award . . . if the arbitrators have been guilty of misconduct . . . in refusing to hear evidence pertinent and material to the controversy or of any other action by which the rights of any party have been prejudiced."  See O & G/O'Connell Joint Venture v. Chase Fam. Ltd. P'ship No. 3, 203 Conn. 133, 146 (1987) (citation omitted).  With respect to the admissibility of evidence in an unrestricted submission, arbitrators are accorded substantial discretion and are "relieved . . . of the obligation to follow strict rules of law and evidence in reaching their decision." Norwich Roman Catholic Diocesan Corporation v. Southern New England Contracting Co., 164 Conn. 472, 477 (1973).  Accordingly, Connecticut courts have not interpreted section 52-418(a)(3) as "mandating that every failure or refusal to receive evidence, even relevant evidence, constitutes misconduct." Jenkins v. Jenkins, 186 Conn. App. 641, 649 (2018). Rather, a party challenging an arbitration award on evidentiary grounds must prove that he was "deprived of a full and fair hearing before the arbitration panel." See O & G/O'Connell Joint Venture 203 Conn. at 149.  "[A]n arbitration hearing is fair if the arbitrator gives each of the parties to the dispute an adequate opportunity to present its evidence and argument . . . ." Jenkins, 186 Conn. App. at 649.

Here, Gerald argues that the arbitrator ignored relevant evidence related to the respondents' employment status and the change in the fiscal year, rendering the arbitration unfair.  See Gerald's Mem. in Support of Pet. to Vacate at 18 (Doc. No. 37). The cases upon which Gerald relies, however, concern arbitrators who refused to admit

certain evidence. See McCann v. Dep't of Env't Prot., 288 Conn. 203, 215-216 (2008) (determining that an arbitrator did not deprive the plaintiff of a full and fair hearing when he refused to accept cumulative documents into evidence); City of Bridgeport v. The Kasper Grp., Inc., 278 Conn. 466, 486 (2006) (determining that an arbitrator committed misconduct when he refused to admit non-cumulative testimony, prejudicing the plaintiff).  Unlike the plaintiffs in these cases, Gerald has not identified any evidence that was excluded from the arbitration hearing.

Gerald contends, rather, that the arbitrator failed to properly consider the admitted evidence before him.  This claim is unfounded.  The Award demonstrates that the arbitrator considered evidence related to both the respondents' employment status, see Award at 3-7 (acknowledging that the Services Agreement "specifies that Windrose is a 'consultant'") , 10-13 (discussing emails regarding the relationship between Gerald and Davidson), and the change in the fiscal year as it related to the respondents.  See Award at 7-9 (discussing the Services Agreement and the change in fiscal year), 29-31 (addressing Gerald's arguments regarding the change in fiscal year).  Gerald has thus failed to establish that the arbitrator committed an "egregious evidentiary error, such as refusing to hear material evidence or precluding a party's efforts to develop a full record." O & G/O'Connell Joint Venture, 203 Conn. at 147; see also Teamsters Loc. Union No. 677 v. Danbury Bd. of Educ., No. CV084018358S, 2009 WL 2506345, at *6 (Conn. Super. Ct. July 17, 2009) (finding no deprivation of a full and fair hearing where the arbitrator heard all of the petitioner's evidence and the petitioner offered no evidence it was denied a request), aff'd sub nom. Teamsters Loc. Union No. 677 v. Bd.

of Educ. of City of Danbury, 122 Conn. App. 617 (2010).[10]  Therefore, section 52–

418(a)(3) does not provide proper grounds to vacate the arbitrator's award.

>    3.    Exceeding or Imperfectly Executing Powers

Gerald also contends that the arbitrator exceeded or imperfectly executed his

powers.  Under section 52-418(a)(4) of the Connecticut General Statutes, an "award

may be reviewed to determine if the arbitrators exceeded their authority . . . ." Harty v.

Cantor Fitzgerald and Co., 275 Conn. 72, 84 (2005).  "Because consensual arbitration is

a contractual remedy and the powers of the arbitrator are determined by the parties

themselves, judicial review of such arbitration awards is limited in scope." O &

G/O'Connell Joint Venture, 203 Conn. at 154.  Courts therefore construe this provision

"narrowly", applying it "only when arbitrators decide issues not presented to them or

grant relief not authorized in the arbitration agreement."  Harty, 275 Conn. at 85 n. 7. To

determine whether an arbitrator has exceeded his authority, the court exercises de novo

review "limited to a comparison of the award to the submission."  Id. at 85.  The inquiry

is generally constrained "to a determination as to whether the parties have vested the

arbitrators with the authority to decide the issue presented or to award the relief

conferred.  With respect to the latter . . . as long as the arbitrator's remedies were

consistent with the agreement they were within the scope of the submission."  Id. at 85-

86 (quotation marks and footnotes omitted).  The court "may not engage in fact-finding

by providing an independent interpretation of the contract", and is limited to "determining

---

[10] Gerald cites State v. New England Care Emps. Union, No. CV020814762, 2002 Conn. Super. LEXIS 2230, at *14-16 (2002) for the proposition that, "where an arbitrator 'pointedly ignore[ed] the language' of the agreement she was meant to interpret . . . [she] rendered the award subject to vacatur." Gerald's Reply at 2.  However, State's holding concerns claims under section 52-418(a)(4), not arbitral misconduct claims under section 52-418(a)(3).

if the arbitrators have ignored their obligation to interpret and to apply the contract as written."  Id. at 86.

In assessing whether an arbitrator has exceeded his power, "[e]very reasonable presumption and intendment will be made in favor of the award and of the arbitrator's acts and proceedings.  Hence, the burden rests on the party challenging the award to produce evidence sufficient to show that it does not conform to the submission."  Bic Pen Corp. v. Local No. 134, 183 Conn. 579, 585 (1981).  "Only upon a showing of egregious error . . . does a court have authority to review the record to determine the sufficiency of the evidence in support of an arbitration award." O & G/O'Connell Joint Venture, 203 Conn. at 155.

Gerald has failed to meet its burden of showing that the arbitrator exceeded his authority.  In their Services Agreement, the parties agreed to submit to arbitration "any dispute, controversy or claim arising out of or relating to this Agreement or the performance by the Parties of its or their terms."  See Services Agreement at ¶ 21(b). Gerald challenges the Arbitrator's decisions excluding Davidson from the application of the extended fiscal year for 2017, see Gerald's Mem. in Support of Pet. to Vacate at 12-14, 18; interpreting the bonus provisions in paragraph 5(b)(2) and Schedule C of the Services Agreement in favor of the respondents, see id. at 14, 18-19; and determining that Gerald's termination of the Service Agreement was not for cause without weighing the respondents' alleged negligent structuring of their foreign currency trades.  See id. at 15, 17.

Critically, in raising these issues, Gerald does not argue that the arbitrator decided questions outside the scope of the Services Agreement.  Rather, it disputes

whether the arbitrator reached the correct decision.  However, this court cannot "review the evidence considered by the arbitrator[ ]" nor can it "review the award for errors of law or fact . . . ."  See Harty, 275 Conn. at 80.  Because the arbitrator addressed each of the issues Gerald raises relating to the Services Agreement, see Award at 54-55 (interpreting 5(b)(2) of the Services Agreement); id. at 59 (interpreting Schedule C to the Services Agreement); id. at 7, 27, 29-49 (acknowledging Gerald's negligence claims and determining that Gerald terminated the agreement without cause), the court cannot "second-guess" the arbitrator's determinations.  See Indus. Risk. Insurers v. Hartford Steam Boiler Inspection & Ins. Co., 273 Conn. 86, 96 (2005).  Therefore, Gerald has failed to demonstrate that the arbitrator exceeded or improperly executed his powers under section 52-418(a)(4).

              4.      Manifest Disregard for the Law

      Finally, Gerald argues that the arbitrator manifestly disregarded the law.  Under section 52-418(a)(4) of the Connecticut General Statutes, a court may vacate an arbitration award that is in manifest disregard of the law.  Alexson v. Foss, 276 Conn. 599, 613-614 (2006).  "Manifest disregard of the law is an extremely deferential standard of review."  Blondeau v. Baltierra, 337 Conn. 127, 161 (2020).  The petitioner must prove three elements: "(1) the error was obvious and capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator; (2) the arbitration panel appreciated the existence of a clearly governing legal principle but decided to ignore it; and (3) the governing law alleged to have been ignored by the arbitration panel is [well-defined], explicit, and clearly applicable."  Norwalk Police Union, Local 1727, Council 15, AFSCME, AFL-CIO v. Norwalk, 324 Conn. 618, 629 (2017) (citation omitted).  "[Courts] are not at liberty to set aside an [arbitrator's] award because

of an arguable difference regarding the meaning or applicability of laws urged upon it . . . . Even if an arbitrator misapplies the relevant law, 'such a misconstruction of the law [does] not demonstrate the arbitrator['s] egregious or patently irrational rejection of clearly controlling legal principles.'" National Ass'n of Government Employees v. Bridgeport, 99 Conn. App. 54, 61 (2007) (internal quotation marks and citation omitted).

Here, Gerald first claims that the Award "fails to acknowledge any authority", demonstrating that the Arbitrator manifestly disregarded applicable law.  Gerald's Mem. in Support of Pet. to Vacate at 19.  Contrary to Gerald's assertion, however, the Arbitrator does cite legal authority in his opinion.  See, e.g., Award at 23, 60.

Gerald also claims that the arbitrator's Award was rendered in manifest disregard of the law because it flouted a "well defined, explicit, and clearly applicable" interpretation of contract law that the arbitrator appreciated and nonetheless disregarded.  See Design Tech, LLC v. Moriniere, 146 Conn. App. 60, 69 (2013).  The arbitrator, Gerald asserts, misinterpreted an unambiguous contract as its "language is clear and conveys a definite and precise intent." Harbour Pointe, LLC v. Harbour Landing Condo. Ass'n, 300 Conn. 254, 260 (2011).  However, the arbitrator expressly considered the language of the Service Agreement and found that it contained a "latent ambiguity."  See Award at 54-55.  Aside from its conclusory statement that "the arbitrator expressed a manifest disregard for these well-defined, explicit, and clearly applicable rules of contract law", Gerald offers no more specific argument in support of

his assertion that the arbitrator manifestly disregarded the law.  See Gerald's Reply at

4.[11]

Thus, Gerald has failed to carry the "exceptionally high burden" of showing

manifest disregard of the law under section 52-418(a)(4).[12]

C.    Attorneys' Fees

Because Gerald has not shown that the arbitrator manifestly disregarded the law

or exceeded or imperfectly executed his powers, the court denies his Second Amended

Petition to Vacate.  Consequently, the court grants Davidson and Windrose's Cross-

Motion to Confirm.  See 9 U.S.C. § 9 (stating that the district court "must grant"

a petition to confirm the arbitration award "unless the award is vacated, modified, or

corrected."). In their Cross-Motion, Davidson and Windrose request attorneys' fees and

costs under paragraph 17 of the Services Agreement, which provides in relevant part: "If

the Consultant is the prevailing Party in any lawsuit or legal proceeding seeking to

enforce any of the terms of this Agreement, the Company agrees to pay all reasonable

─────────────────────

[11] Gerald also submits its Post-Arbitration-Hearing Submission, in which it argues that the respondents breached their obligations and that the arbitrator should apply the multifactor test of the Restatement (Second) of Contracts to determine whether the respondents' breaches were material. See Gerald's Post Hearing Submission (Doc. No. 26-1).  However, the arbitrator found that Gerald, not Davidson and Windrose, repudiated the Services Agreement, and that the respondents were, accordingly, not in breach.  See Award at 39-48.  Because the arbitrator found that the respondents were not in breach, he had no reason to consider whether any breaches by them were material.

[12] Gerald also argues that "a court does have the authority to review the evidence considered by the arbitrators upon a showing of egregious error." See Gerald's Reply at 3.  However, the record here does not substantiate a showing of egregious error. See, e.g., O & G/O'Connell Joint Venture, 203 Conn. at 155.  Furthermore, Connecticut courts have addressed claims of "egregious or patently irrational application of the law" by conducting a two-part inquiry under section 52-418(a)(4): whether (1) the award fails to conform to the submission or (2) the arbitrators manifestly disregarded the law. See Harty, 275 Conn. at 85.  The court has already considered both prongs of this analysis.

21

costs and reasonable attorney's fees incurred by the Consultant." <u>See</u> Services Agreement at ¶ 17.

Connecticut follows the "American rule" for attorneys' fees, generally denying such awards.  <u>See</u> <u>TES Franchising, LLC v. Feldman</u>, 286 Conn. 132, 148 (2008). However, "a specific contractual term may provide for the recovery of attorney's fees and costs . . . ."  <u>Total Recycling Servs. of Ct., Inc. v. Connecticut Oil Recycling Servs., LLC</u>, 308 Conn. 312, 327 (2013).  Even when a contract entitles a party to such fees, "the party seeking the award of fees must first satisfy a threshold evidentiary showing" of reasonableness.  <u>Id.</u> Here, Windrose and Davidson request an opportunity to submit a further application for attorneys' fees and costs incurred.  <u>See</u> Resp'ts' Mem. in Support of Cross-Mot. to Confirm at 29.  Gerald does not object to this request.  The court therefore grants Windrose and Davidson leave to file a Motion for Attorneys' Fees. <u>See</u> D. Conn. L Civ. R. 11.

## V.    CONCLUSION

For the reasons stated above, the court denies the petitioner's Second Amended Petition to Vacate (Doc. No. 36) and grants the respondents' Cross-Motion to Affirm (Doc. No. 20).  If the respondents seek attorneys' fees and costs, they are directed to file a Motion for Attorneys' Fees within 30 days from the date of this Ruling's entry.

**SO ORDERED.**

Dated at New Haven, Connecticut this 27th day of October 2021.


  /s/ Janet C. Hall
  Janet C. Hall
  United States District Judge